FILED
CLERK
12/7/2012 9:38 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANA REYNOSO

        Plaintiff,

    -against-

ALL FOODS, INC.,

        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
12-CV-1714 (ADS)(AKT)

**APPEARANCES:**

**FRANK & ASSOCIATES, P.C.**
*Attorneys for the Plaintiff*
500 Bi-County Blvd., Suite 112N
Farmingdale, NY 11735
    By:    Jose G. Santiago, Esq.
            Peter A. Romero, Esq., of Counsel

**LA REDDOLA, LESTER & ASSOCIATES, LLP**
*Attorneys for the Defendant*
600 Old Country Road, Suite 224
Garden City, New York 11530
    By:    Robert J. La Reddola, Esq., of Counsel

**SPATT, District Judge.**

The Plaintiff in this case, Ana Reynoso ("Reynoso" or the "Plaintiff"), commenced this action against the Defendant All Foods, Inc. ("All Foods" or the "Defendant"), asserting causes of action pursuant to Title VII of the Civil Rights Act 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, alleging gender discrimination, hostile work environment, and retaliation. Presently before this Court is a motion by the Defendant to dismiss the Plaintiff's claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below the Defendant's motion is granted in part and denied in part.

1

## I. BACKGROUND

**A. Factual Background**

Unless otherwise stated, the following facts are drawn from the Plaintiff's Complaint and are construed in the light most favorable to the Plaintiff.

The Plaintiff is a resident of Brentwood, New York. The Defendant is incorporated under New York State law and has its principal place of business located in Deer Park, New York. At all the relevant times, All Foods is a supermarket that employed more than fifteen employees. On or about August 31, 2009, the Plaintiff, Ana Reynoso, commenced her employment with the Defendant as a packager. Her duties consisted of packaging seasonings, hot pepper and other foods. When she was hired, the Plaintiff was scheduled to work Monday through Friday, from 8:00 AM to 5:00 PM. (Compl., at ¶ 16.) During the course of her employment with All Foods, Alex Granados ("Granados") was her general manager and Noel Salguero ("Salguero") was the Plaintiff's direct supervisor. (Compl., at ¶¶ 17-18.)

The Plaintiff contends that during the course of her employment with All Foods, she was discriminated against and harassed because of her sex. Reynoso further contends that the Defendant subjected her to a hostile work environment, which included inappropriate, discriminatory, harassing, and derogatory comments based on her gender. The Plaintiff alleges a series of incidents to support her allegations of sexual harassment and a hostile work environment.

As a general matter, Reynoso maintains that during her course of employment with the Defendant, on many occasions and in her presence, Salguero "constantly made inappropriate sexual comments about women", and commented to other co-workers about the Plaintiff's

buttocks. (Compl., at ¶¶ 24–25.) The Plaintiff also alleges that Salguero leered at the Plaintiff for unreasonable amounts of time on a daily basis.

In addition, Reynoso alleges specific incidents in support of her claims, as set forth below.

First, she alleges that in or about November 2010, "Salguero forcibly grabbed [the] Plaintiff from behind, put his arms around [the] Plaintiff, and pressed his body against her. Plaintiff had to use physical force to pull herself away from Salguero's grasp". (Compl., at ¶ 19.) Thereafter, subsequently to prying herself away from Salguero, the Plaintiff told him to never touch her again.

Second, in or about January 2011, "Salguero summoned [the] Plaintiff into his office, and asked if [the] Plaintiff was pregnant. [The] Plaintiff was not pregnant, and she told Salguero that she was not pregnant". (Compl., at ¶ 29.) Thereafter, Salguero constantly told the Plaintiff that she looked fat.

Third, in or about February 2011, Salguero told the Plaintiff "she had a good-looking backside, and that her husband must really get pleasure from her backside". (Compl., at ¶ 22.) Reynoso further alleges she informed Salguero that his comment was offensive and disrespectful.

Fourth, in or about March 2011, Salguero went over to Reynoso's work area and in front of other co-workers, said to her: "con tu trasero me hago dos o tres porvitos," which in English, loosely translates to: "with your backside, I would ejaculate at least two or three times". (Compl., at ¶ 23.)

In addition, at some unspecified time, Salguero "sat directly behind the Plaintiff and stared at her backside and commented about her buttocks". (Compl., at ¶ 21.)

Along with the allegations set forth above, Reynoso also relates a series of incidents to support her retaliation claim against the Defendant. She alleges that despite the fact that the Defendant failed to set forth a procedure for reporting complaints of discrimination, she nevertheless complained to Granados, the general manager, of Salguero's allegedly discriminatory and harassing conduct towards her. Reynoso contends that Granados not only "dismissed her complaints, but also failed to take any corrective action". (Compl., at ¶ 27.) She was thereafter subjected to a series of incidents that led to her termination of employment with the Defendant. In the Complaint, the Plaintiff does not specify when or how many times she made complaints of discrimination. However, based upon the Complaint, the Court can infer that the Plaintiff made her grievances to Granados sometime prior to January 2011. Furthermore, the Court can also infer that the retaliatory incidents alleged took place after the complaints of discrimination, sometime between January 2011 and on or about July 5, 2011, when the Plaintiff was terminated.

The following are the alleged incidents that took place following her complaint to Granados, which the Plaintiff contends constitute retaliatory conduct.

First, in or about January 2011, "after [the] Plaintiff objected to Salguero's conduct, Salguero summoned [the] Plaintiff to his office and asked if she was pregnant". (Compl., at ¶ 28.) The Plaintiff alleges she was not pregnant, and, thus, told Salguero the same. Thereafter, the Plaintiff alleges Salguero constantly told the Plaintiff she looked fat.

Second, in or about February 2011, "Salguero turned off the heat in the room in which [the] Plaintiff was working, and forced [the] Plaintiff to work in an unbearably cold room". (Compl., at ¶ 31.) Furthermore, the Plaintiff further alleges that, on or about the same time,

4

"[the] Defendant even prohibited [her] from using the ladies' bathroom at work. (Compl., at ¶ 32.)

Third, in or about February 2011, "when [the] Plaintiff arrived at work, Salguero refused to open the door to [the] Defendant's workplace, and instructed co-workers not to open the door for her". (Compl., at ¶ 33.)

Fourth, in or about May 2011, Salguero "summoned the Plaintiff and co-worker Tatiana Amador ("Amador") to his work station, and informed them that they would be held to a higher production standard. (Compl., at ¶ 34.)

Fifth, at some unspecified time, the Plaintiff further contends that after she complained about Salguero's "discrimination and harassing conduct, [the] Defendant required [her] to lift heavy objects. (Compl., at ¶ 35.)

Sixth, in or about June 2011, Salguero reassigned the Plaintiff from the day shift, which was her original work schedule, to the graveyard shift.

Reynoso further contends that her counsel sent a letter, dated June 20, 2011, to the Defendant's general manager Granados, informing the Defendant that the Plaintiff had retained counsel and was to pursue the present action against them. Thereafter, she alleges that "[o]n or about June 27, 2011, Granados issued [Reynoso] two written reprimands." (Compl., at ¶ 39.) The first letter reprimanded the Plaintiff for making complaints about discrimination. (Compl., at ¶ 40.) The second letter of reprimand admonished the Plaintiff for failing to work the graveyard shift. (Compl., at ¶ 41.) Less than one week later, on or about July 5, 2011, the Defendant terminated the Plaintiff's employment. (Compl., at ¶ 42.)

**B. Procedural History**

On or about July 28, 2011, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that the Defendant discriminated against her in violation of Title VII. On February 15, 2002, the EEOC issued to the Plaintiff a Dismissal and a Notice of Right to Sue. Thereafter, on April 5, 2012, Reynoso filed the present action against All Foods, claiming violations of Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. §2000 *et seq*.

**C. The Parties' Submissions**

Before the Court proceeds to analyze the merits of the Defendant's motion, certain matters as to the parties' submissions must be addressed.

First, the Plaintiff was to serve and file the opposition to the Defendant's motion to dismiss by June 29, 2012. While the Plaintiff apparently served the Defendant with her opposition in a timely fashion, she neglected to timely file her opposition with the Court. Instead, she filed this opposition on September 18, 2012. As there is no objection by the Defendant to this late filing with the Court, the opposition to the motion will be accepted and considered.

Second, in reviewing the memoranda concerning the instant motion to dismiss, it became apparent that the Defendant's reply memorandum, filed electronically with the Court on July 13, 2012, does not correspond to the reply memorandum that was provided to the Court as a courtesy copy. Moreover, the reply memorandum that was filed electronically contains a different caption—Tatiana Amador v. All Foods; a different docket number—12-cv-1715(SJF)(AKT); and contains different claims—i.e., a pregnancy discrimination claim—than the courtesy copy that was sent.

This oversight is substantial, and the Court is constrained to consider only the reply memorandum that was filed electronically onto the docket, rather than the courtesy copy that was provided. Nevertheless, while the Court could potentially afford the Defendant with an opportunity to explain good cause for its inadvertence and possibly permit it to refile the correct reply—which the Court assumes is the courtesy copy—ultimately the Court need not resolve the issue. This is because regardless of whether the Court considers the reply filed electronically or provided as a courtesy copy, it would not change the outcome of the instant motion. Thus, the Court will go on to assess the Defendant's motion to dismiss.

## II. DISCUSSION

### A. Legal Standard on a Motion to Dismiss

Under the now well-established Twombly standard, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Routolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)); see ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by a mere conclusory statement, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

7

experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determinate whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the Plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The Second Circuit has held that "the pleading requirements in discrimination cases are very lenient, even *de minimis*." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998)); see also Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 380 (2d Cir. 2011) ("evidence necessary to satisfy th[e] initial burden [is] "minimal" and "*de minimis*.").

## B. As to the Plaintiff's Title VII Discrimination Claims

Title VII prohibits discrimination based on race, color, religion, sex, or national origin by an "employer". 42 U.S.C. § 2000e-2. An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of

twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. §2000e(b).

In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for the position she held or sought, (3) she suffered an adverse employment action, and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). With regard to the fourth prong of this test, the Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the Plaintiff that "she was subject to disparate treatment . . . [compared to persons] similarly situated . . . [to herself]." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (internal quotations and citations omitted).

The Plaintiff does not specifically allege in either the complaint or in her opposition that certain events constitute adverse employment actions based upon her gender. An adverse employment action is a "'material adverse change' in the terms and conditions of employment." McDowell v. N. Shore-Long Island Jewish Health Sys., Inc., 839 F. Supp. 2d 562, 566 (E.D.N.Y. 2012) (quoting Sanders v. New York City Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004)). Such an action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." McDowell, 839 F. Supp. 2d 562, 566 (quoting Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). Materially adverse changes encompass "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (quoting Crady, 993 F.2d at 136).

9

The only events that are alleged in the Complaint that could potentially qualify as materially adverse employment actions are (1) being held to a higher production standard; (2) the demotion from the day shift to the graveyard shift schedule; and (3) her eventual termination. However, even if the Court can infer such circumstances as having a materially adverse effect on her employment, the Defendant argues and the Court agrees that the Plaintiff has not set forth any allegations that would result in an inference that these instances occurred because of her gender. See Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (holding that the Plaintiff failed to plead gender discrimination when the Complaint failed "to allege that she was subject to specific gender-based adverse employment action by the [individual Defendants]"). Moreover, the Plaintiff has also not alleged that similarly situated employees were treated differently. To defeat the Defendant's motion, the Plaintiff must have pleaded with particularity that the Defendant intentionally discriminated against her on the basis of her gender to support her claim, which she has not done. See Rivera–Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006) ("[plaintiff's] complaint proffers only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss.") (internal citations and quotations omitted).

Furthermore, the Plaintiff's reply also does not address the gender discrimination claim, and rather focuses solely on the hostile work environment. It therefore appears to the Court that it is a hostile work environment theory that the Plaintiff is pursuing.

In sum, because "a complaint must include . . . a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" in order to avoid dismissal under Fed. R. Civ. Proc. 12(b)(6), and because the Plaintiff's

10

complaint fails to do so here, the Court finds that the Plaintiff has failed to sufficiently plead a *prima facie* case for discrimination. Patane v. Clark, 508 F.3d 106, 113 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)) (internal quotation marks and citation omitted). Accordingly, the Defendant's motion to dismiss the Title VII gender discrimination cause of action is granted.

## C. As to the Plaintiff's Title VII Hostile Work Environment Claims

The Plaintiff also asserts that she was subjected to unlawful discrimination and harassment through the creation of a severe and pervasive hostile work environment that substantially interfered with her employment, in violation of Title VII. In order to state a claim for a hostile work environment, a plaintiff must plead facts that would tend to show conduct: (1) that is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) that creates an environment that the plaintiff subjectively perceives as hostile or abuse; and (3) that creates such an environment because of the plaintiff's sex. Patane, 508 F.3d 106, 113 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

The Supreme Court has observed that courts examining hostile work environment claims should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 605 (2d Cir. 2006) (citing Harris, 510 U.S. 17, 23 (1993)). In the context of a 12(b)(6) motion, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Patane, 508 F.3d at 113 (citing Terry v.

11

Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)). At this stage, courts "have repeatedly cautioned against setting the bar too high". Id.

The Defendant argues that Reynoso has done no more than allege three incidents of inappropriate behavior that were not so pervasive as to meet this objective test. "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001). In other words, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Illiano v. Mineola Union Free Sch. Dist., 585 F. Supp. 2d 341, 350 (E.D.N.Y. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

While the Court agrees with the principle that isolated, minor episodes of harassment normally do not merit relief under Title VII, the Court disagrees with its applicability in this case. "[T]here is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." Richardson v. N.Y. State Dept. of Corr. Serv., 180 F.3d 426, 439 (2d Cir. 1999) (quoting Rodgers v. W.-S. Life Ins. Co., 12 F.3d 668, 674 (7th Cir. 1993); see also Harris, 510 U.S. at 22, 114 S. Ct. 367 (noting that hostile environment analysis "is not, and by its nature cannot be, a mathematically precise test").

From in or about November 2010, through in or about July 2011, when Reynoso was terminated, Salguero is alleged to have constantly leered at her for unreasonable amounts of time on a daily basis; continuously commented on her buttocks to the Plaintiff and to other co-workers; constantly made inappropriate sexual comments about women in the Plaintiff's presence; and sat behind the Plaintiff, staring at her backside. It is also alleged that on one

occasion, Salguero "forcibly grabbed Reynoso from behind, put his arms around her, and pressed his body against her. Reynoso "had to use physical force to pull herself away from Salguero's grasp." On another occasion, Salguero is claimed to have told Reynoso "she had a good looking backside, and that her husband must really get pleasure from her backside." In addition, on another instance, Salguero went over to "[the] Plaintiff's work area, and in front of other co-workers, said [to her a statement in Spanish], which in English loosely translates to: [w]ith your backside I would ejaculate at least two (2) or three (3) times."

Salguero's conduct, comments and epithets, when viewed objectively in the Plaintiff's favor, can be inferred as physically threatening or humiliating. See Hovrath v. American Tissue Corp., 210 F. Supp. 2d 189, 194 (E.D.N.Y. 2002) (finding a hostile work environment sexual harassment when the Defendant "constantly stared at [the Plaintiff's] breasts, asked her to go for walks, commented about her looks, and on one instance, took [the Plaintiff's] hand and kissed it"). Such conduct is so pervasive that a reasonable employee could find that her employment had been altered for the worse by gender-based hostility. Petrosino v. Bell Atl., 385 F.3d 210 (2d Cir. 2004); see also Illiano, 585 F. Supp. 2d 341, 350 (finding gender-based hostility when the Defendants' comments and epithets included telling the Plaintiff she could "be one of his girls" and that he "could have [her] anytime he wanted to," and by maintaining "an inappropriate relationship with his other [employee] by 'constantly placing his hands on [her] body' and speaking to her with profane and sexually suggestive language."); Torres v. Pisano, 116 F.3d 625, 633 (2d Cir. 1997) (quoting Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59 (2d Cir. 1992) (finding that a supervisor who made vulgar comments and gestures had created a hostile work environment)).

The Complaint also alleges that the Defendant's conduct had a negative impact on Reynoso's well-being. Harris, 510 U.S. 17, 22; see also, Hovrath, 210 F. Supp. 2d 189, 194 (referring to the subjective component of the hostile work environment claim). Contrary to the Defendant's position that the Plaintiff does not allege any specific harm or discomfort, the Plaintiff explicitly alleges that she found Salguero's conduct to be offensive and disrespectful, and that she told that to Salguero. Id. Taking into account the length of the harassing conduct; the nature of the sexual harassment conduct; and the fact that a great deal of this conduct occurred in front of other co-workers, when viewed in light most favorable to the Plaintiff, demonstrates an atmosphere of sexual hostility. Cruz v. Coach Stores Inc., 202 F3.d 560 (2d Cir. 2000). Thus, it is reasonable to infer that Reynoso personally considered the environment to be hostile. See Harris, 510 U.S. 17, 22 ("so long as the environment would reasonably be perceived, and is perceived, as hostile or abusive . . . , there is no need for it also to be psychologically injurious.").

The Defendant also argues that the Plaintiff has not alleged that the harassing conduct occurred because of her gender. The Second Circuit has recognized that sexually charged conduct in the workplace may create a hostile work environment. Patane, 508 F.3d at 114. See also Tomka, 66 F.3d 1295, 1305 (indicating "that even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability"); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986) ("a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment")). On the other hand, "courts have never held that workplace harassment is automatically discrimination because of sex merely because the words used have sexual content

or connotations . . . . Instead, the harassment must have a distinctive adverse impact on the victim because of the victim's sex." Nash v. New York State Executive Dep. Div. Of Parole, No. 96 Civ. 8354, 1999 WL 959366, *9 (S.D.N.Y. Oct. 20, 1999) (internal quotations omitted)).

Here, the Court can infer that the Salguero's actions against the Plaintiff were premised upon her gender. See Petrosino v. Bell Atlantic, 385 F.3d 210 (holding that "the Defendant's action of making persistently sexual offensive remarks . . . [are] particularly offensive to women because th[is] action casts women in a demeaning role"); see also Redd v. N.Y. Div. of Parole, 678 F.3d 166, 181 (2d Cir. 2012) ("If the claim were that a supervisor—of either gender—stated to a female employee "I want to feel your breasts," or stated to a male employee "I want to feel your penis," a jury could easily infer that that stated desire was because of the employee's sex."); Reid v. Ingerman Smith LLP, __ F. Supp. 2d __, 2012 WL 2700508, at *5 (E.D.N.Y. 2012) ("Instead, drawing all inferences in Reid's favor as it must, the Court concludes that the amended complaint's characterization of Sadowski's act of grabbing Reid's breast as a "sexual advance" is sufficient to show that Sadowski's conduct was "because of" Reid's sex."). Cf. Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 250–51 (W.D.N.Y. 2003) (finding that supervisor's vulgar and offensive language, including frequent use of the word "fuck" in the presence of both male and female employees, did not establish discriminatory animus).

Therefore, at this stage of the litigation, drawing all reasonable inferences in Reynoso's favor, the Court finds that a reasonable person could find, as Reynoso did, that Salguero's conduct was so severe and pervasive that it created a hostile work environment. Accordingly, the Defendant's motion to dismiss this cause of action based on a hostile work environment is denied.

**D. As to the Plaintiff's Title VII Retaliation Claim Against the Defendant**

The Plaintiff also asserts that the Defendant retaliated against her in violation of Title VII, which forbids an employer from terminating an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" Terry v. Ashcroft, 336 F.3d 128, 140–41 (2d Cir. 2003) (internal citations omitted). In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she was engaged in a protected activity under Title VII; (2) the defendant was aware of plaintiff's participation in the protected activity; (3) the employer took an adverse action against plaintiff based upon her activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. Id.; Schiano, 445 F.3d 597, 608. At this stage of the case, in order to defeat the present motion, the Plaintiff is only required to give fair notice of the retaliation claim and the grounds upon which it rests. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514-15, 122 S. Ct. 992, 152 L. Ed.2d 1 (2002).

In this case, there does not appear to be any dispute that Reynoso engaged in a protected activity when she complained about Salguero's conduct to the general manager. Moreover, it does not appear to be contested that Reynoso's employer—All Foods and specifically the general manager, Granados—was aware of this activity.

However, the Defendant disputes that the Plaintiff has sufficiently alleged an adverse employment action. In the discriminatory retaliation context, an "adverse employment action" indicates a "materially adverse change in the terms and conditions of employment." Schiano, No. Civ. 03-492, 2005 WL 1638167 (E.D.N.Y. July 12, 2005) (citing Richardson, 180 F.3d 426,

446). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Schiano, 445 F.3d 597, 608 (quoting Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir.2005) (internal quotation marks omitted)).

In the present case, Reynoso alleges that she was demoted and ultimately terminated in retaliation for her participation in the protected activity of having complained of Salugero's alleged sexual harassment, in violation of Title VII. In essence, the Plaintiff claims that she was demoted via her transfer to the graveyard shift and then ultimately terminated as retaliation.

The Court finds that her transfer to the graveyard shift does not necessarily qualify as an adverse employment action. See Albuja v. Nat'l Broadcasting Co. Universal, Inc., 851 F. Supp. 2d 599, 609 (S.D.N.Y. 2012) ("Boyd, however, has not asserted that working night shifts caused any diminution in his compensation or job responsibilities. . . . As such, Boyd has failed to carry his initial burden to present a prima facie case of discrimination as to scheduling."); Antonmarchi v. Consol. Edison Co., No. 03 Civ. 7735, 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008) (holding that assignment to permanent night shifts and denial of shift transfers could not constitute adverse action for Title VII purposes); see also Johnson v. Eastchester Union Free Sch. Dist., 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) (transfer to working less convenient hours does not amount to adverse action). Cf. Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 571 (2d Cir. 2011) ("the switch to the night shift was not materially adverse because, as his own testimony makes clear, Tepperwien requested it.").

On the other hand, her subsequent termination clearly constitutes an adverse employment action. See Miller v. Praxair, Inc., 408 Fed. App'x 408, 410 (2d Cir. 2010) (noting that typical

17

examples of actionable adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."); Conklin v. County of Suffolk, 859 F. Supp.2d 415, 432 (E.D.N.Y. 2012).

With regard to the final prong—casual connection—the Plaintiff largely relies on temporal proximity. Reynoso asserts that most of the relevant events happened within the relatively short time frame of only six months, which is the span of time between when she first complained of the discrimination sometime in January 2011, and her termination on or about July 5, 2011. She claims that this fact alone demonstrates sufficient temporal proximity for purposes of the causation analysis.

Moreover, the Plaintiff argues that an inference of causation can also be established by merely viewing a portion of her contentions. Namely, within one week of the Plaintiff's counsel notifying the Defendant that the Plaintiff intended to pursue employment discrimination claims against All Foods, Defendant reprimanded her for complaining about discrimination, and then one week later, terminated her employment. The Court agrees that the mere one month gap between all of these events is sufficient to promote an inference of causation. Conklin, 859 F. Supp. 2d at 432.

The Defendant disputes that the Plaintiff has met her burden of demonstrating a *prima facie* case sufficient to oblige it to explain its adverse actions. Specifically, the Defendant contends that the Plaintiff has not offered any "evidence or explanation other than perhaps temporal proximity to establish causal connection." However, this argument is unavailing because the allegations necessary to satisfy the Plaintiff's initial burden is "minimal" and "de minimis." See Zimmerman, 251 F.3d at 380. With regard to the establishment of a *prima facie*

18

case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place. See, e.g., Espial v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (citing Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001)).

While some courts within this Circuit have held that a three month gap is insufficient to show a casual connection, others have found that a separation as much as eight months will permit an inference of causation. Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990); Grant v. Bethlehem Steel Corp., 662 F.2d 43, 45-46 (2d Cir 1980). The Court finds that the sequences of events alleged in this particular case, beginning with Reynoso's initial complaints of Salguero's behavior to the general manager; Reynoso's transfer to the graveyard shift; the letter of reprimand for complaining about the discrimination (the attorney letter); and her subsequent termination, all took place within such a limited time frame that she has established a *prima facie* case of retaliation. Conklin, 859 F. Supp.2d 415, 432.

The Defendant argues that regardless of the Plaintiff's *prima facie* case, they have articulated a legitimate, non-retaliatory reason for the Plaintiff's termination. The Defendant contends that the Plaintiff failed to meet the Defendant's request to work at a higher production standard, and failed to follow the directives in the reprimands. (Def.'s Br. at 14). "It is, of course, possible that the evidence will demonstrate that [the Defendant] had legitimate non-discriminatory and non-retaliatory reasons for [its] actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage." Robinson v. Gucci Am., No. 11 Civ. 3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012). Thus, this argument is equally unavailing.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's motion to dismiss the Plaintiff's first cause of action for Title VII gender discrimination is GRANTED; and it is further

**ORDERED** that the Defendant's motions to dismiss the Plaintiff's second cause of action for Title VII hostile work environment is DENIED; and it is further

**ORDERED** that the Defendant's motion to dismiss the Plaintiff's third cause of action for Title VII retaliation is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
December 7, 2011

                                                   ___/s/ Arthur D. Spatt_____
                                                   ARTHUR D. SPATT
                                              United States District Judge